ROBERT N. FOSTER, Appellant, *vs.* THE ILLINOIS ZINC COMPANY, Appellee.

*Opinion filed February 20, 1908.*

FRAUD—*what is not ground for setting aside a deed to coal under farm.* Representations by the agent of a coal company to the owner of a farm that the agent had bought part of the coal land adjoining the farm and intended to buy the rest, and that it would be to the owner's interest to sell while he had a chance, as he might not be able to sell when all the surrounding coal land was bought up, are not such representations, even if they were relied upon, as justify setting aside a deed to the coal under the farm.

APPEAL from the Circuit Court of LaSalle county; the Hon. S. C. STOUGH, Judge, presiding.

SEARS & SMITH, for appellant.

DOLPH, BUELL & ABBEY, and DUNCAN, DOYLE & O'CONOR, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The appellant filed his bill in the circuit court of LaSalle county to set aside a deed for the coal underlying a certain quarter section of land in said county, executed by the complainant to the defendant, on the ground that its execution was procured by the fraud and misrepresentation of the defendant's agent, or to require a re-conveyance to the complainant of the first vein of coal underlying said land. From a decree dismissing the bill for want of equity the complainant has appealed to this court.

The fraud and misrepresentation charged in the second amended bill related to the procuring of an option from complainant in November, 1899, and the execution of the deed in July, 1900. It is alleged that B. D. Brewster, an agent of appellee, came to appellant's home in Aurora for the purpose of obtaining an option on his coal lands, and

represented that he had bought the Reynolds property adjoining appellant's on the east and had made arrangements for the purchase of the Bull and Carlton properties adjoining appellant's on the north and north-east and was then on his way to close up the deal for the Bull and Carlton properties, and that appellant, unless he sold his coal rights to Brewster, would be in a pocket and could not work or mine the coal on said premises and it would be valueless to appellant, and that there were but two veins of coal under said premises; that appellant, relying on Brewster's statements, gave a written option to Brewster for the purchase of the third vein of coal underlying said land for $12 an acre, expressly reserving the second vein.

Brewster's first meeting with appellant was at the latter's home in Aurora in the latter part of November, 1899, and the question of the purchase of the coal was then discussed between them. Brewster and appellant both testified before the master, and they differ somewhat as to what was said in regard to the purchase by Brewster, for the company he represented, of the coal under the land adjoining appellant's. Appellant testified that Brewster told him he had bought from Reynolds on the east and was on his way to Chicago to close for the purchase of the Bull and Carlton properties, and if appellant did not sell he would be in a pocket, and Brewster further told him of a farmer who had 240 acres and would not sell and now was in a pocket and could not sell. Brewster testified that he did not tell appellant that if he did not sell he would be in a pocket, but that he did tell him he thought a man ought to sell while he had the opportunity; that he told the appellant that he was surrounded; that Brewster controlled the Robbins land, which is the same as the Carlton land, and expected to get Bull's land and the Reynolds land; that he told appellant about Barrett, who would not sell and the coal around whose land had been sold so that afterward he could not sell. No one was present at the conversation between Brewster and ap-

pellant, but appellant's sister was in the house and heard the conversation. She testified that Brewster said his company had bought the Reynolds property and that he was then on his way to buy the Bull and Carlton properties and that the appellant would be in a pocket, and he told of the farmer who would not sell and was in a pocket.

The effect of all this evidence is, that Brewster urged appellant to sell and stated that he had bought a part of the coal lands adjoining the appellant's and intended to buy the rest; that it was for appellant's interest to sell, because if he did not until all the coal around him had been sold he might not have an opportunity to sell. These representations were not of such a character as to justify a court of equity in rescinding a contract of sale even if one had been entered into on the strength of them. The parties were dealing at arm's length. Brewster was, in fact, engaged in buying the coal lands adjoining appellant's. Their sale could not in any way affect appellant's land except in the indirect way that it might lessen the demand for his land. But he could not control this in any way. Whether the adjoining coal lands continued in their present ownership or were sold, he had no rights in them to be affected by their sale, and his interest in his own land would, of course, be unaffected by it. Neither he nor Brewster could know whether the latter's efforts to buy of the adjoining owners would be successful, though it appears from the record they were partially so. And, in fact, the appellant was not induced by Brewster's representations to give the option. Appellant declined altogether to consider the giving of an option except for one of the two veins of coal on his lands, and as to the option for that one he declined to give it at that time. Brewster left the option blanks with him, and he told Brewster that if he concluded to sell he would fill out the option and mail it to him, properly signed. That was the end of the matter for more than two months, and then, on January 30, 1900, appellant wrote out the option

in his own handwriting for the third vein, expressly reserving the second, and mailed it to Brewster. This option expired on February 28, 1900, and it was afterward extended by appellant to April 30 and again to July 1, 1900. It was finally allowed to lapse and no action was taken on it. The evidence does not show that any false representations were made by Brewster at the time the negotiation for the option was first entered upon, or afterward, that would justify the rescinding of the option or the deed or that influenced the appellant with reference to either.

A few days before the expiration of the last extension of the option Brewster paid appellant $100 and told him he thought they were going to take the coal. However, on July 13 Brewster came to appellant's office and told him that he (Brewster) represented the Illinois Zinc Company and that the company would not take the coal unless it got it all. An interview occurred later between the appellant, Brewster, Noon, manager of the company, Buell, its attorney, and Eades, mining engineer, at which an agreement was reached for the sale of all the coal and a deed was prepared and executed by appellant for all the coal underlying his land for the consideration of $2000. Appellant claims that at this meeting it was again stated to him by Brewster that the company had bought the Bull, Reynolds and Carlton land and that if he did not sell he would be in a pocket, and that Brewster also stated that the second and third veins were all the coal on the land. Brewster and Noon deny that any such statement was made and the appellant is not corroborated.

The evidence fails to show that appellant was deceived or defrauded in the execution of the option or the deed, and the decree of the circuit court dismissing his bill for want of equity will be affirmed.

*Decree affirmed.*